TECHNOGRAPH PRINTED CIRCUITS, LTD., and Technograph, Inc. (Formerly Technograph Printed Electronics, Incorporated), Plaintiffs,

v.

METHODE ELECTRONICS, INC., Defendant.

TECHNOGRAPH PRINTED CIRCUITS, LTD., and Technograph, Inc. (Formerly Technograph Printed Electronics, Incorporated), Plaintiffs,

v.

AUTOMATIC ELECTRIC COMPANY, Defendant.

TECHNOGRAPH PRINTED CIRCUITS, LTD., and Technograph, Inc. (Formerly Technograph Printed Electronics, Incorporated), Plaintiffs,

v.

WEBCOR ELECTRONICS, INCORPORATED, Defendant.

TECHNOGRAPH PRINTED CIRCUITS, LTD., and Technograph, Inc. (Formerly Technograph Printed Electronics, Incorporated), Plaintiffs,

v.

CRONAME, INCORPORATED, Defendant.

Civ. A. Nos. 62 C 1761, 63 C 36, 63 C 111 and 63 C 142.

United States District Court
N. D. Illinois, E. D.

Feb. 28, 1968.

Walter J. Blenko, Jr., and Paul A. Beck, Blenko, Leonard & Buell, Pittsburgh, Pa., M. Victor Leventritt and Sidney Bender, Leventritt, Bush, Lewittes & Bender, New York City, Jerome F. Fallon and John W. Chestnut, Dawson, Tilton, Fallon, Lungmus & Alexander, Chicago, Ill., for plaintiffs.

Robert C. Keck, Valentine A. Weber, Jr., and William N. Walker, Spray, Price, Hough & Cushman, and Lewis T. Steadman, Hill, Sherman, Meroni, Gross & Simpson, Chicago, Ill., for Methode Electronics, Inc.

Theodore W. Anderson, Jr., and Harry J. Roper, Pendleton, Neuman, Seibold & Williams, Chicago, Ill., for Automatic Electric Co.

Watson D. Harbaugh, Harbaugh & Thomas, Evanston, Ill., for Webcor Electronics, Inc.

Warren C. Horton and Lawrence W. Brugman, Horton, Davis & McCaleb, Chicago, Ill., for Croname, Inc.

## SECOND AMENDED CLASS ACTION MEMORANDUM AND ORDER

BECKER,* District Judge.

### Background

In the years 1958 to 1963, Technograph Printed Circuits, Ltd., and Technograph, Inc. (formerly Technograph Printed Electronics, Inc.), a corporation, instituted approximately 74 civil actions for patent infringement against approximately 80 manufacturers of electronic equipment in 18 different United States District Courts. In addition, there is one action pending in the United States Court of Claims instituted by the plaintiffs herein in which the United States is alleged to have participated in patent infringement. In these actions each defendant is alleged to have infringed one or more of the United States Patents No. 2,441,960, No. 2,706,697 and Reissue No. 24,165 (hereinafter the "Eisler" patents named for the alleged inventor of the patented process for electronic printed circuits.) In the action pending in the United States Court of Claims, infringement of United States Patent No. 2,706,-697 is alleged.

In the interest of brevity the United States Patents hereinabove described will be given the following short titles:

| United States Patent Number | Short Title |
| --- | --- |
| 2,441,960 | No. 960 |
| 2,706,697 | No. 697 |
| Reissue 24,165 | No. 165 |

The action pending in the Court of Claims involving No. 697 is entitled Technograph Printed Circuits, Ltd. and Technograph Printed Electronics, Inc. v. the United States; the Bendix Corporation and the Hewlett-Packard Company, Third Party Defendants, No. 127–62. This action will be referred to hereinafter as "the Court of Claims action".

Approximately 35 actions have been dismissed without prejudice and may by leave of Court be reinstated by motion under the terms of the orders of dismissal.[1] At least 28 cases[2] remain

---

* Judge William H. Becker, Chief Judge, United States District Court for the Western District of Missouri, Acting by Designation and Intercircuit Assignment to the United States District Court for the Northern District of Illinois, Eastern Division.

1. Technograph v. R.C.A., Civil Action No. 2519, D.Del., was reactivated on October 18, 1967, upon R.C.A.'s motion for reinstatement.

2. Including Technograph v. R.C.A. (D. Del.) and Foxboro Co. v. Technograph, a declaratory judgment action commenced on October 10, 1967, in the Middle District of North Carolina.

pending in 6 judicial districts and in the Court of Claims as shown by the following tabulation of pending cases:

| Court | Number of Cases Pending |
|---|---|
| District of Delaware | 1 |
| Central District of California | 15 |
| Northern District of Illinois | 4 |
| Southern District of Illinois | 1 |
| District of Maryland | 4 |
| Middle District of North Carolina | 1 |
| Northern District of Ohio | 1 |
| Court of Claims | 1 |

Employing the valuable experience of the multi district electrical equipment litigation,[3] the Co-Ordinating Committee for Multiple Litigation undertook to explore means for securing the most economical, efficient and fair disposition of these cases. There were doubts whether a national transfer program under Title 28 U.S.C. § 1404(a), which had been so effective in the electrical equipment cases,[4] would be possible in the Technograph patent litigation because of the venue requirements of § 1400(b) applicable to patent infringement claims for relief.[5] Nevertheless, efforts of the Co-Ordinating Committee for Multiple Litigation to suggest means of co-ordination of pretrial and trial procedures of this litigation have not heretofore attained the desired ends of economical, efficient and fair co-ordinated disposition of this litigation. Unless some further action in this litigation is taken under Rule 23, multiple protracted trials in the several courts, and the issuance of conflicting orders and decisions are quite likely to ensue.

### The Cases in the Northern

### District of Illinois

The plaintiffs herein have commenced four actions in the Eastern Division of the Northern District of Illinois against the following defendants:

1. Methode Electronics, Inc. (62 C 1761, filed September 17, 1962);

2. General Telephone & Electronics Corporation and Automatic Electric Company (63 C 36, filed January 7, 1963);[6]

3. Webcor Electronics, Incorporated (63 C 111, filed January 18, 1963); and

3. Much of this experience is described in an article entitled "The Electrical Equipment Antitrust Cases: Novel Judicial Administration", by Phil C. Neal and Perry Goldberg, A.B.A.J., Vol. 50, No. 7, July 1964.

4. See Kansas City Power and Light Co., et al. v. I-T-E Circuit Breaker Co. (W.D.Mo., 1965) 240 F.Supp. 121, petition for writ of mandamus and prohibition denied, (per curiam C.A.8, 1965) 343 F. 2d 361; Union Electric Co. v. I-T-E Circuit Breaker Co., unreported written opinion (E.D.Mo., 1965), petition for writ of prohibition denied (per curiam C.A.8, 1965), I-T-E Circuit Breaker Company

v. Regan, 348 F.2d 403; Atlantic City Electric Co., et al. v. I-T-E Circuit Breaker Co. (S.D.N.Y., 1965) 247 F. Supp. 950.

5. It may be that the issues raised by the counterclaims in these actions could be ordered tried separately and transferred under § 1404(a); however, a determination of this question is not necessary to the action taken herein.

6. General Telephone & Electronics Corp. was dismissed from a prior action in this district for lack of personal jurisdiction and improper venue, leaving Automatic Electric Company as sole defendant in this action.

4. Croname, Incorporated (63 C 142, filed January 24, 1963).

The defendants and patent or patents upon which each is sued are the following:

| Defendant | No. 960 | No. 967 | No. 165 |
|---|---|---|---|
| Methode Elec., Inc. | X | X | X |
| Automatic Electric Co. | | X | X |
| Webcor Elec., Inc. | | | X |
| Croname, Inc. | X | X | X |

These actions (in the Northern District of Illinois) were originally assigned to The Honorable Michael L. Igoe, United States District Judge. Before a decision on the merits was rendered by Judge Igoe, The Honorable R. Dorsey Watkins, United States District Judge for the District of Maryland, on May 27, 1963, determined in an action filed May 25, 1959, that certain claims of the Eisler patents were invalid for a number of reasons, including obviousness in view of the prior art, and that they were not infringed by a defendant (or certain defendants). Judge Watkins' memorandum opinion and final judgment is reported as Technograph Printed Circuits, Ltd. v. Bendix Aviation Corporation (D. Md., 1963) 218 F.Supp. 1–67. This judgment was affirmed *per curiam* in 327 F.2d 497 (C.A.4, 1964), cert. den. 379 U.S. 826, 85 S.Ct. 53, 13 L.Ed.2d 36 (1964).

In the *per curiam* memorandum opinion of the Court of Appeals (327 F.2d at 498) the following appears:

"After careful consideration of the record, the arguments and the briefs of counsel, we are persuaded that the patent claims are invalid for obviousness in the light of the prior art for the reasons fully discussed in the opinion of the District Court. * * *"

On the basis of the *Bendix* decision and after hearing argument on possible ways to decide the cases without a full trial, Judge Igoe granted defendants' motions for the summary judgment by minute order. The Court of Appeals for the Seventh Circuit reversed this action.

Technograph Printed Circuits, Ltd., et al. v. Methode Electronics, Inc., et al. (C.A.7, 1966) 356 F.2d 442. The Court of Appeals based its decision on the reasoning of Triplett v. Lowell, 297 U.S. 638, 642–644, 56 S.Ct. 645, 80 L.Ed. 949 (1935) and Aghnides v. Holden (C.A.7, 1955) 226 F.2d 949, and stated:

"We find from the record before us on this appeal that there is a genuine issue of material fact present here essential to the determination of the issues presented by defendants' motions for summary judgment. The district court erred in granting summary judgment below." (356 F.2d at 447.)

"* * * The Bendix decision may by comity be given great weight by the district court after it hears testimony in the trial of the instant case on the merits. That consideration is committed to the discretion of the trial court." (356 F.2d at 449.)

Accordingly these Illinois *Technograph* cases were remanded to the district court for further proceedings consistent with the opinion of the Court of Appeals.

After remand these cases were reassigned to The Honorable Edwin A. Robson who, at a pretrial hearing held October 25, 1966, explored the legality, feasibility and desirability of processing these cases under the newly amended civil rule on class actions, Rule 23, F.R. Civ.P., effective July 1, 1966. All discovery herein was stayed by Judge Robson on October 25, 1966, until December 16, 1966. On December 5, 1966, the plaintiffs filed a motion for leave to amend the complaints herein and to

maintain these actions as a class action pursuant to Rule 23, F.R.Civ.P. Thereafter the parties submitted memoranda setting forth their positions with respect to the application of Rule 23 to these cases.

These cases have been reassigned temporarily to the undersigned (acting in the absence of Judge Robson). In hearings of February 8 and March 16, 1967, the class action proposal was again considered.

By order of March 16, 1967, the four actions pending in the Northern District of Illinois were consolidated for further pretrial proceedings under Civil Rule 42, F.R.Civ.P. (Decision on the question of consolidation for all further purposes was reserved.) At that time it was found that for purposes of consolidation "each of these civil actions involve common questions of law and fact, namely, the validity of one or more of" the Eisler patents.

With a view toward maintaining a class action, the parties (on March 31, pursuant to minute order of March 16) requested leave to file amended and supplemental pleadings and a proposed form of order granting the leave so requested. By order of April 14, the parties' requests were granted, and amended pleadings in a single document were filed on May 1.[7] The material portion of the answers and counterclaims (including amended answers and counterclaims) filed by the defendants in these actions are more particularly described hereinafter. In addition to the several actions mentioned hereinabove, plaintiffs have in writing notified over 200 parties that plaintiffs are claiming that the parties notified have been and are infringing one or more of the patents herein concerned and that the parties notified are liable to the plaintiffs for the alleged infringement. The claims against the parties so notified may result in the filing of separate civil actions for alleged patent infringement against each of the parties so notified.

*Findings, Conclusions and Determination That Certain Issues Herein Shall be Separated and Consolidated for all Purposes as a Class Action Under Rule 42 and Rule 23, F.R. Civ.P.*

The parties herein, by order of this Court, have filed amended pleadings. In these amended pleadings the plaintiffs seek to convert these actions into a class action under new Civil Rule 23. Subdivision (c) (1) of that rule provides:

"As soon as practicable after the commencement of an action brought as a class action, the court shall determine by order whether it is to be so maintained. An order under this subdivision may be conditional, and may be altered or amended before the decision on the merits."

*Subdivision (a) of Rule 23*

■ This Court finds from the records and files that all four of the initial prerequisites to maintaining a class action, set forth in subdivision (a) of Rule 23, exist in these cases.

These prerequisites will be discussed in numerical order. The first is as follows:

"(1) [there exists a] class * * *. so numerous that joinder of all members is impracticable * * *"

As shown hereinabove, the *Technograph* litigation is massive multidistrict litigation of national interest. Over 70 actions have been filed in 18 federal district courts and in the Court of Claims.

---

7. The Court presently has under consideration proposed schedules for discovery and proposed written interrogatories submitted both by the plaintiffs and the defendants. Documents deposited and to be deposited by plaintiffs with the clerk of this Court may be available for inspection and copying by any defendant in any action brought by plaintiffs which involve the validity of the patents in suit here, subject to claims of privilege.

In the amended pleadings of certain defendants it is stated that there are 240 alleged infringers of one or more of the Eisler patents. These allegations are not controverted by the plaintiffs. Furthermore, the parties have stated that there are or may be many more alleged infringers whose identity and location are unknown at this time. The known alleged infringers of one or more of the Eisler patents constitute a class so numerous that joinder of all members is impracticable, not only because of venue problems, but also because of the great number of such parties. Furthermore there may be discovered hereafter a substantial number of alleged infringers of one or more of the Eisler patents who will further increase the class. This Court further finds that joinder of all known members of this class would not only be impracticable but may be impossible.

■ The second prerequisite of subdivision (a) of Rule 23 is as follows:

"(2) there are questions of law or fact common to the class * * *"

The questions to be determined on the amended pleadings of the parties herein include questions of law or fact or both common to the class, namely, the (1) validity of one or more of the Eisler patents, (2) alleged procurement of one or more of the patents through fraud on the Patent Office, and (3) alleged misuse of the patents. In respect to these questions subclasses of the primary class will hereafter be defined under Rule 23 (c) (4), and the orders hereafter to be entered herein shall so provide.

The adjudication of other questions such as those arising under anti-trust claims for relief (see e. g. Count II of plaintiffs' amended complaint against Methode Electronics, Inc.) will not be treated as binding upon other members of the class unless otherwise hereafter ordered by the Court.

■ In respect to the plaintiffs' claims of infringement it is hereby concluded that the questions of infringement of one or more of the Eisler patents is not a "question of law or fact common to the class", and the claims of infringement will not be adjudicated as a class action unless otherwise hereafter ordered by the Court. The issues of infringement will be ordered to be the subject of a separate trial under Rule 42, F.R.Civ.P., and the trial thereof deferred until determination of the class action on the merits, unless otherwise hereafter ordered.

■ The third prerequisite of subdivision (a) of Rule 23 is as follows:

"(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class * * *"

It is hereby found that the four defendants in these actions are representatives of the class, and that some of the defendants are representatives of the subclasses to be defined hereafter. Both Methode Electronics, Inc. and Croname, Inc. are claimed to have infringed, and in defense of the claims assert the alleged invalidity and misuse of, all three of the Eisler patents. Automatic Electric Company in defense alleges the invalidity and misuse of the two patents (No. 2,706,697 and Re. No. 24,165) which it is claimed to have infringed. Webcor Electronics, Inc. asserts the invalidity and misuse of the one patent (Re. No. 24,165) for the infringement of which relief is claimed. The issues of invalidity and misuse of one or more of the patents in suit is also raised by the counterclaims of each of the defendants in counts under the Declaratory Judgment Act. The amended counterclaims raise the defense of invalidity and misuse on behalf of the other members of the class. In addition Methode asserts the unenforceability of the patents on grounds of laches and of the statute of limitations. Further, Methode, Automatic Electric, Webcor and Croname claim unenforceability of Patent Re. No. 24,165, alleging fraud on the United States Patent Office and misuse. Methode, Automatic Electric and Webcor combine these claims of unen-

forceability with a counterclaim for damages under the anti-trust laws. These defenses and counterclaims may be summarized as follows:

### Defenses and Counterclaims

| | Invalidity | Declaratory Judgment on Behalf of Class | Laches | Statute of Limitations | Fraud on Patent Office | Misuse |
|---|---|---|---|---|---|---|
| Methode | X | X | X | X | X (anti-trust) | X (anti-trust) |
| Automatic Electric | X | X | | | X (anti-trust) | X (anti-trust) |
| Webcor | X | X | | | X (anti-trust) | X (anti-trust) |
| Croname | X | X | | | X | X |

From the pleadings and hearings herein it is found that the claims and defenses which have actually been raised by the parties representing the class and the subclasses to be defined hereafter are typical of the claims and defenses reasonably expected to be raised by the members of the class and of the subclasses to be defined hereafter.

■ The fourth prerequisite of subdivision (a) of Rule 23 is as follows:

"(4) the representative parties will fairly and adequately protect the interests of the class."

The interests of the defendants herein, as representatives of the class, in the outcome of the controversy is great. The four defendants are represented by able and determined counsel. Each defendant in representing itself will fairly and adequately represent the interests of the class and of any subclass of which it is a member. It is therefore found that parties defendant possess the means, skill and integrity necessary to protect fairly and adequately the interests of the class and of any subclass of which any of them is a member.

■ The court by appropriate order will provide for notice under subdivision (d) of Rule 23 for the protection of all members of the class and of any subclass hereafter defined. In so far as this action is maintained as a class action under subdivision (b) (3) of Rule 23, any member of the class or of any subclass hereafter defined who is not satisfied with the adequacy of representation herein may, under subdivision (c) (2), exclude himself from this action by appropriate notification under that subdivision or may, if he desires, enter an appearance through his own counsel. If desirable or necessary the Court will make other and further orders including orders under subdivision (d) of Rule 23 for purposes of providing and insuring adequate representation of the class and any subclass hereafter defined.

### Subdivision (b) of Rule 23

■ Next the provisions of subdivision (b), under which class actions are maintainable, will be considered. In that connection it is hereby found that, in addition to satisfying all of the prerequisites of subdivision (a), these actions meet all of the provisions of subdivision (b). The separate provisions of subdivision (b) are set forth hereinafter.

Subdivision (b) (1) and Clause (A) thereof provide:

> "the prosecution of separate actions by or against individual members of the class would create a risk of * * inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, * * *."

The prosecution of separate actions by and against the individual members of the class and any subclasses thereof would create a risk of inconsistent adjudications on the common questions, namely invalidity, fraud on the United States Patent Office, and misuse, preventing the patentee from enforcing one or more of the patents against some alleged infringers while permitting enforcement thereof against others. As a result incompatible standards of conduct for the plaintiffs would be established. The presence in the counterclaims of prayers for declaratory judgments as well as for treble damages increases the risk that the adjudications in the separate actions of the rights, obligations and privileges of the patentee may be inconsistent and varying.

In Technograph Printed Circuits, Ltd. v. Bendix Aviation Corporation, supra, there is a final adjudication of invalidity of the Eisler patents which prescribes a standard of conduct for the plaintiffs in their present and future conduct with respect to Bendix on principles of *res adjudicata*. Wherever Bendix infringes the claims of the patents adjudged to be invalid as to Bendix, plaintiffs must refrain from attempting to interfere or to otherwise enforce its alleged patent monopolies. The application of the same standard of conduct toward defendants in this suit has been declared to be so doubtful that the standard may or may not prove to be applicable in respect to plaintiffs' future conduct toward these defendants and others of the class, depending on the outcome of the relitigation of the same questions in this litiga-

tion. Technograph Printed Circuits, Ltd., et al. v. Methode Electronics, Inc., et al. (C.A.7, 1966) 356 F.2d 442. Further, presently in the Central District of California the District Court is actively exploring the question of holding that the plaintiffs are obligated to refrain from relitigating against the defendants in the California cases the questions finally decided in the *Bendix* case in the Fourth Circuit.

No one can confidently predict that in a judicial climate more favorable to a liberal application of the doctrine of collateral estoppel, the plaintiffs here can successfully resist application of the doctrine in the California cases and perhaps cases in other circuits. See Nickerson v. Pep Boys-Manny, Moe and Jack (D.Del.1965) 247 F.Supp. 221. Cf. Nickerson v. Kutschera, et al. (C.A.3 March 6, 1968) 390 F.2d 812; and Technograph Printed Circuits, Ltd., et al. v. United States, et al. (1967) 372 F.2d 969, 178 Ct.Cl. 543.

The likelihood of varying adjudications in respect to claimed monopolies of the Eisler patents, and each of them, presents a real threat of incompatible adjudications which transcends the "possibility of incompatible adjudications" mentioned in the Advisory Committee Notes to Rule 23. Not only is this clear concerning the pending litigation and the defendants in these cases, but is apparent concerning the threatened litigation against the hundreds of alleged infringers who have been notified in writing of plaintiffs' claims including claims for damages for past, present and future alleged infringements of the defendants. These are additional cogent reasons for finding that the prosecution of separate actions by or against the individual members of the class would create the risk of varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, as required by Clause (A) of subdivision (b) (1).

■ Subdivision (b) (1) and Clause (B) thereof provide:

"the prosecution of separate actions by or against individual members of the class would create a risk of * * adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests; * * * "

It is found that subdivision (b) (1) and Clause (B) thereof are applicable, because the prosecution of separate actions against individual members of the class and any subclasses thereof would create a risk of adjudications which would as a practical matter be dispositive of the interests of other members not parties to the adjudication, or substantially impair or impede their ability to protect their interests. Selected adjudications of the questions of invalidity, misuse and fraud on the United States Patent Office may be accorded great weight in industrial relations by comity between courts and may greatly impair and impede the ability of members of the class and any subclasses thereof who are not parties to this action to protect their interests. To the extent that such selected adjudications vary or are inconsistent the ability of those who are not parties to this action will be further impaired and impeded.

The disruption of industrial relations of the members of the class by threats and claims based upon the patent grants, and also upon the possibility of a final, favorable adjudication to plaintiffs in some competent court, as well as the great expense of defending these and other separate actions to the point of adjudication would substantially impair or impede the ability of members of the class to protect their interests.

■ The next provision of subdivision (b) of Rule 23 is (b) (2) which provides:

" * * * the party opposing the class has acted * * * on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; * * * "

It is found that by obtaining patents, notifying some alleged infringers of the patents, and threatening some of them with infringement suits unless they take licenses, and by bringing civil actions against some of them, the plaintiffs herein have acted on grounds generally applicable to the class and any subclasses thereof. Further plaintiffs' claims for relief against each defendant contain prayers for injunctions. Each defendant has amended its counterclaims to pray for declaratory and injunctive relief. These prayers are typical of the requests for relief usually made by patentees and alleged infringers in patent infringement actions. By these counterclaims final injunctive relief and declaratory relief with respect to the class as a whole has been made appropriate.

The actions of the plaintiffs in filing and prosecuting the multidistrict litigation mentioned above, and in threatening actions for damages and injunctions against hundreds of members of the class, is analogous to examples of commercial and industrial action mentioned in the Advisory Committee Notes to subdivision (b) (2) and appears to fall well within the actions described in subdivision (b) (2).

■ The final paragraph of subdivision (b) (3) of Rule 23 reads as follows:

" * * * the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B)

the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action."

Since it will hereafter be ordered that this action proceed under subdivision (b) (3) of Rule 23 in respect to the subclass consisting of parties to pending litigation in other courts involving one or more of the Eisler patents, the applicability of subdivision (b) (3) will be determined.

It is found that the questions of alleged invalidity, misuse and alleged fraud on the United States Patent Office are not only common to the members of the subclass mentioned above but are also predominant over any questions affecting only individual members of the class or the subclasses thereof.

It is further found that considering each of the four factors listed in Clauses (A), (B), (C) and (D) of subdivision (3) (described as "non-exhaustive" in the Advisory Committee's Comment), a class action is and will be superior to the other available methods for the fair and efficient adjudication of the questions common to the subclass. The advantages of a class action in this forum far outweigh the disadvantages to the subclass when all pertinent matters mentioned in subdivision (b) (3) of Rule 23 are considered.

With respect to Clause (A), the interests of members of the class (and of any subclass) in individually controlling the prosecution and defense of separate actions are slight when compared to the many benefits of adjudication of the common questions in a class action in this forum.

With respect to Clause (B), it appears that plaintiffs have commenced nearly 74 infringement actions in 19 different federal courts. Adjudication on the merits in other districts prior to the time of pretrial and trial proceedings on the merits in these cases will cause those defendants to be excluded from the (b) (3) subclass. Further, it does not appear that the individual case of a member of the (b) (3) subclass would be delayed or made more burdensome in another district if a class action is maintained here under subdivision (b) (3), nor would the plaintiffs, who are prosecuting over 25 suits, be delayed or hindered in securing an adjudication on their claimed rights. Plaintiffs' counsel are not convinced of this because of plaintiff's involvement in active litigation in the Court of Claims, California and in Illinois simultaneously. But plaintiffs instituted the litigation in these jurisdictions. The action taken here offers promise of preventing further simultaneous involvement in active litigation in other states. Furthermore the prospect of a fair and efficient disposition of this litigation offers many rewards to the plaintiffs and members of the class and all subclasses thereof. In respect to the Court of Claims litigation, efforts are well underway to co-ordinate the pretrial proceedings and discovery in this Court and in the Court of Claims so as to lessen the burden of all parties concerned. The common issues of the litigation already instituted against known members of the (b) (3) subclass are substantially the same. Therefore, the use of a class action device would not appear to alter materially the nature of pending and prospective actions.

Concerning Clause (C), the concentration of the litigation of the common questions in this forum in the North Central United States is desirable because a substantial number of actions is already pending therein, and because an efficient, fair and economical adjudication of the common questions can be accomplished in this forum. Such a concentration of the litigation is desirable in the interest of the class and any subclass now or hereafter defined.

Concerning Clause (D), the difficulties likely to be encountered in the management of a class action are not important when weighed against the benefits to the class, and any subclasses thereof, and to

the administration of justice. An adjudication of the common questions in these actions treated as a class action will be effective to settle the common questions arising in these actions and in the potential claims against and defenses of over two hundred known and potentially many more unknown parties who may be alleged to have infringed one or more of three related patents. To process the pending litigation and most of the remaining active, inactive and the potential litigation by a large number of separate trials would "raise administrative difficulties far exceeding those present in this class action." Brennan v. Midwestern United Life Ins. Co. (N.D.Ind., 1966) 259 F.Supp. 673, 684.

 In conclusion it is hereby determined that a class action under Rule 23 would achieve the objectives enumerated in the Notes of the Advisory Committee namely:

" * * * economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." (39 F.R.D. 73, 102–103 (1966).)

### ORDERS

For the foregoing reasons, it is hereby

Ordered and determined that the above-styled actions be maintained as class actions under Rule 23, F.R.Civ.P., and that unless and until modified by further order of this Court, the class against whom and in whose behalf these actions shall be maintained is hereby defined as all parties who are within any of the subclasses hereinafter defined, excluding those parties for or against whom the common questions of invalidity, misuse and fraud on the United States Patent Office have been finally adjudicated in any other competent court at the time when pretrial and trial proceedings on the merits of the common questions are hereafter resumed in these actions. "Plaintiffs" as used in this order is defined as including the plaintiffs, severally or jointly, and privies, licensees or other parties who are authorized by, or claim a right under, Technograph Printed Circuits, Ltd., Technograph, Inc. (formerly Technograph Printed Electronics, Inc.), or either of them, to employ the patented process or processes here involved. "Written notice" as used in this order is defined as including any formal notice, letter or other writing addressed to, intended for or delivered by any means to an alleged infringer of one or more of the patents in suit. It is further

Ordered that the defendants herein and each of them be, and they are hereby, designated as representatives of the class and of each subclass of which any of them shall be a member; and that if the claims against any defendant or defendants herein be dismissed, the remaining defendant or defendants be, and they are hereby, designated as representatives of the class and the subclass of which any of them shall be a member. It is further

Ordered that the issues raised by the complaints herein and by the counterclaims herein, involving the common questions of invalidity, misuse and fraud on the United States Patent Office be, and they are hereby, ordered to be tried separately and first under Rule 42, F.R. Civ.P. It is further

Ordered that the issues hereinabove ordered to be tried separately and first be consolidated for all further pretrial and trial proceedings hereafter conducted. It is further

Ordered that to avoid alleged venue problems, if any, these consolidated actions be maintained primarily on the common questions of invalidity, misuse and fraud on the United States Patent Office, arising on the counterclaims for declaratory judgment, and secondarily and simultaneously on the common questions arising on the complaints and answers. It is further

Ordered that pursuant to subdivision (c) (4) of Rule 23, the following subclasses be, and they are hereby, defined: *Subclass No. 1*: All parties who have been or are manufacturing printed cir-

cuits by any process claimed in United States Patent No. 2,441,960 or who have been hereafter and before September 5, 1967, notified that they have infringed United States Patent No. 2,441,960 by an allegation in any civil action not dismissed with prejudice (including these actions) or in a written notice (formal or informal) by plaintiffs or either of them, or by anyone claiming under plaintiffs or either of them, except parties described in one or more of the Subclasses 4, 5 and 6 hereinafter.

*Subclass No. 2:* All parties who have been or are manufacturing (singly, or jointly with others where the party performs one of the manufacturing steps) products, commonly called printed circuits, by any process claimed in United States Patent No. 2,706,697, which manufacturing includes at least all of the steps of one of the following sequences:

Sequence A:

A method of manufacturing the conductive metal portions of electric and magnetic circuits of the kind including a conductive pathway pattern upon an insulation backing comprising the steps of printing a negative representation of the desired pathway pattern upon the metal surface of a sheet of foil clad insulation, thereupon depositing dissimilar metal upon the unprinted surfaces of the foil, and finally removing the foil from the imprinted areas whereby an insulation backed metallic pathway pattern is formed.

Sequence B:

In a method of manufacturing the conductive metal portions of electric and magnetic circuits of the kind including a conductive pathway pattern upon an insulation backing, the steps of printing a negative representation of the desired pathway pattern upon a sheet of metal foil, thereupon depositing metal upon an unprinted surface portion of the foil, and then transferring the metal foil to an insulating support.

Sequence C:

A method of manufacturing a component of electric and magnetic circuit systems involving an insulation backed conductive pathway pattern, which comprises providing insulation backed foil, then printing a negative representation of the pattern upon said foil, depositing a layer of metal dissimilar to the metal of said foil upon all exposed parts of said foil, then removing said representation from the foil, and finally removing all parts of the foil exposed by said removal of the representation by chemical action attacking the metal of said foil but not said deposited dissimilar metal whereby said pathway pattern is formed.

or who have been or are hereafter and before September 5, 1967, notified that they have infringed United States Patent No. 2,706,697 by an allegation in any civil action not dismissed with prejudice (including these actions) or in a written notice (formal or informal) by the plaintiffs or either of them, or by anyone claiming under plaintiffs or either of them, except parties described in one or more of the Subclasses 4, 5 and 6 hereinafter.

*Subclass No. 3:* All parties who have been or are manufacturing printed circuits by any process claimed in United States Patent Reissue No. 24,165 or who have been hereafter and before September 5, 1967, notified that they have infringed United States Patent Reissue No. 24,165 by an allegation in any civil action not dismissed with prejudice (including these actions) or in a written notice (formal or informal) by plaintiffs or either of them, or by anyone claiming under plaintiffs or either of them, except parties described in one or more of the Subclasses 4, 5 and 6 hereinafter.

*Subclass No. 4:* All parties to civil actions (other than these civil actions) involving the enforceability (including alleged invalidity, misuse and fraud on the United States Patent Office) of United States Patent No. 2,441,960 which at the time of the first publication of notice of this action, or at the time of receipt of formal notice thereof (whichever is earlier), are pending and have not been finally adjudicated on the merits or dis-

missed with prejudice to the claim of enforceability of said United States Patent No. 2,441,960.

*Subclass No. 5:* All parties to civil actions (other than these civil actions) involving the enforceability (including alleged invalidity, misuse and fraud on the United States Patent Office) of United States Patent No. 2,706,697 which at the time of the first publication of notice of this action, or at the time of receipt of formal notice thereof (whichever is earlier), are pending and have not been finally adjudicated on the merits or dismissed with prejudice to the claim of enforceability of said United States Patent No. 2,706,697.

*Subclass No. 6:* All parties to civil actions (other than these civil actions) involving the enforceability (including alleged invalidity, misuse and fraud on the United States Patent Office) of United States Patent Reissue No. 24,165 which at the time of the first publication of notice of this action, or at the time of receipt of formal notice thereof (whichever is earlier), are pending and have not been finally adjudicated on the merits or dismissed with prejudice to the claim of enforceability of said United States Patent Reissue No. 24,165.

It is further

Ordered that these consolidated actions be maintained as class actions under subdivisions (b) (1) and (b) (2) (independently and jointly) of Rule 23, F.R.Civ.P., with respect to the following subclasses:

 Subclass No. 1

 Subclass No. 2

 Subclass No. 3

It is further

Ordered that these consolidated actions be maintained as class actions under subdivision (b) (3) of Rule 23, F.R.Civ.P., in respect to the following subclasses:

 Subclass No. 4

 Subclass No. 5

 Subclass No. 6

It is further

Ordered that any party who is a member of one or more of the Subclasses 4, 5 and 6 and requests exclusion therefrom be required to request exclusion in writing from each of the Subclasses 4, 5 and 6 of which he is a member; that Subclasses 4, 5 and 6 be deemed to be a single subclass for the purpose of requests for exclusion. It is further

Ordered that any party who was a recipient of a letter from Technograph, Inc., over the signature of its President, Mr. Hubert L. Shortt, sent on any date from July 27, 1967, to September 5, 1967, inclusive, advising the recipient of plaintiffs' claim of infringement of one or more of the United States Patents No. 2,441,960, No. 2,706,697, and Re. No. 24,165, be, and he is hereby, granted leave to file, within 45 days after publication of notice of the class action order in the Wall Street Journal, a motion or letter request for an order excluding the party from membership in one or more of the subclasses 1, 2 and 3 hereinabove defined upon a showing that no justiciable controversy exists between the plaintiffs herein, or either of them, and the movant. It is further

Ordered that any person, partnership, association, corporation or other such entity having interest in the subject matter of this action may, under subdivision (d) (2) of Rule 23, before a decision on the merits, file a motion to intervene in these actions. It is further

Ordered that any person, partnership, association, corporation or other such entity having interest in the subject matter of this action may, before a decision on the merits, file a motion for exclusion from these class action proceedings for good cause. It is further

Ordered that this Court does hereby retain jurisdiction under subdivision (c) (1) of Rule 23 to correct, modify, annul, vacate and supplement this order from time to time before the decision on the merits of the common questions as it may deem proper.