RESEARCH CORPORATION, Plaintiff-Counterdefendant,

v.

PFISTER ASSOCIATED GROWERS, INC., et al., Defendants-Counterplaintiffs.

RESEARCH CORPORATION, Plaintiff,

v.

CARGILL, INC., et al., Defendant.

Nos. 63 C 597, 68 C 1081.

United States District Court
N. D. Illinois, E. D.

June 16, 1969.

Clyde F. Willian, James P. Hume and Robert L. Harmon, Hume, Clement, Hume & Lee, Chicago, Ill., for plaintiff Research Corp. and party defendant Paul A. Mangelsdorf.

Erwin C. Heininger and Burton E. Glazov, Mayer, Friedlich, Spiess, Tierney, Brown & Platt, Chicago, Ill., for defendant Cargill, Inc.

George E. Howell, Tenney, Bentley, Guthrie, Askow & Howell, Chicago, Ill., for defendants Moews Seed Co., J. Robert Huey, American Seed Trade Ass'n and William Heckendorn.

Walther E. Wyss and Warren D. McPhee, Mason, Kolehmainen, Rathburn & Wyss, Chicago, Ill., for defendants Pioneer Hi-Bred Corn Co., Pfister Associated Growers, Inc., John P. Case, Lewis Camp, W. R. Grace & Co., Arthur Walter Seed Co., Pioneer Hi-Bred Corn Co., Naperville Seeds, Inc., Hughes Hybrids, Inc., Earl Hughes and Robert Hughes.

H. Blair White, Arthur F. Staubitz and William G. Schaefer, Jr., Sidley & Austin, Chicago, Ill., for defendants DeKalb Ag Research, Inc., and Thomas Roberts.

## MEMORANDUM AND ORDER ON CLASS ACTION

ROBSON, District Judge.

The defendants have moved to strike or dismiss the class action allegations in the complaint, as amended. For the reasons set forth below, this court is of the opinion that the motions should be denied and that this case should be maintained as a class action, as limited herein.

In 1963, Research Corporation, the plaintiff, sued Pfister Associated Growers, Inc. for infringement of Patent No. 2,753,663, entitled "Production of Hybrid Seed Corn." In 1964, the plaintiff added several other individual and corporate defendants. A trial was held on the issue of patent validity in 1966, after which a court-appointed expert submitted a report on the scientific aspects of the patent. He was interrrogated on this report and the case was taken under advisement in 1968 for ruling on the issue of validity. In June, 1968, the plaintiff filed a class action against certain defendants not named in the original suit. It was decided, after conference, to vacate the order taking the earlier case under advisement and consolidate both cases for all purposes. Both sides, therefore, would have another opportunity to submit evidence in addition to the record already made in the earlier case on the issue of validity.

This court requested the parties to file briefs on the class action question. This the parties have done. After thorough consideration, in the light of the opinion rendered by Judge William H. Becker in Technograph Printed Circuits, Ltd. v. Methode Electronics, Inc., 285 F. Supp. 714 (N.D.Ill.1968), this court concludes that a class action is proper on both the patent and antitrust phases of this case. The patent issues will be treated first.

## PATENT CLASS ACTION

Class actions are governed by Rule 23 of the Federal Rules of Civil Procedure. Section (a) of Rule 23 provides for four criteria by which all class actions are to be judged. These are (1) that the class is so numerous as to make joinder impracticable; (2) that there are common questions of law or fact; (3) that the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4)

that the representative parties will fairly and adequately protect the interests of the class. The defendants agree, as they must, that (1) and (2) are clearly satisfied. The class is at least as large as the over 400 seed corn producers in this country, and it is impractical, if not impossible to make them all representative parties. It is further true that since the defendant class is being charged with infringement, and the validity of the patent is already in issue, there is at least the one major common issue of validity. Infringement admittedly is a more individualized issue, but since most of the named defendants have almost admitted infringement, and the industry has been using the patented process to varying degrees since the patent's issuance in 1956 (and earlier), this is not viewed as a substantial obstacle to maintaining this suit as a class action. In effect, a ruling on the issue of validity will be dispositive of most of the patent issues in this case. Those defendants who would still wish to litigate the issue of infringement will, of course, have this opportunity, but this court is of the opinion that the possibility of such trials will not be sufficient to militate against the class action.

The third requirement of Rule 23(a), that the claims or defenses of the representative parties are typical of those of the class, is also met. With regard to the patent issues, the defense of invalidity is pervasive, and will be asserted strongly by all the representative parties. The defense of noninfringement is more of a defense tailored to the individual, but, as noted above, this is not seen as affecting substantially the "typical" nature of the named defendants' defenses.

The fourth requirement, that the named parties will fairly and adequately protect the interests of the class, is, notwithstanding the protestations of the defendants, clearly met. A brief glance at the massive record made in the earlier case shows without a doubt that the named parties will prosecute this action with more than "due diligence." The same parties are named as the representative defendants in the class action, along with Cargill, Inc., one of the world's largest agricultural commodities companies. In addition, it is almost undisputed that the entire industry (or at least a substantial part of it) has been involved in one way or another in the defense of this suit through meetings and a common defense fund. This court weighs the defendants' protestations that they do not "desire" to represent the entire class, but this is hardly enough to overcome the overwhelming evidence of their ability and intention to challenge the plaintiff's assertions of validity and infringement. In any event, this factor of "desire," as opposed to ability should not be given more than token weight.

It is thus this court's conclusion that the requisites of Rule 23(a) have been met and present no obstacle to the maintenance of a class action on the patent issues in this suit. The court's inquiry does not end here. It must be decided whether any (or all) the conditions in Rule 23(b) have been satisfied.

Rule 23(b) (1) (A) provides that a class action may be maintained if

"the prosecution of separate actions by or against individual members of the class would create a risk of * * inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class * * *."

There is no question that there is a risk of "inconsistent or varying adjudications" for the patent class defendants in this case. A judgment of validity in one case could be matched by another judgment of invalidity. This would impose upon the plaintiff, "the party opposing the class," incompatible standards of conduct. The plaintiff might be prevented from enforcing the patent against some alleged infringers in one circuit while the plaintiff might be per-

mitted enforcement against others in that same circuit. Technograph Printed Circuits, Ltd. v. Methode Electronics, Inc., supra, at 722. The standards of 23(b) (1) (A) have therefore been satisfied.

Rule 23(b) (1) (B) provides that a class action may be maintained if

"the prosecution of separate actions by or against individual members of the class would create a risk of * * adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests * * *."

The difficulty of subject matter inherent in most patent cases, and most certainly this one, gives selected adjudications of validity or invalidity more than the usual weight when a court is considering the adoption of another court's opinion or reasoning by means of comity. This practical fact, added to the great expense of defending a patent suit of this type, would tend toward impairing or impeding the nonparty class members' ability to protect their interests. As the court said in Technograph, supra, at 723: "To the extent that such selected adjudications vary or are inconsistent the ability of those who are not parties to this action will be further impaired and impeded." It therefore appears to this court that this class action is maintainable under Rule 23(b) (1) (B).

An action may be maintained under Rule 23(b) (2) if

"the party opposing the class has acted * * * on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole * * *."

This same situation was confronted by the court in Techograph, supra, at 723. By notifying alleged infringers of the patent, threatening suits for infringement if licenses are not taken, and by bringing these civil actions against them, the plaintiff has acted on grounds generally applicable to the class. In addition, even in the studied absence of counterclaims by the defendants on the issue of validity, final injunctive relief would be proper whether the patent is held valid or invalid. The defendants would certainly require that the plaintiff not sue them further, if the patent were held invalid; and the plaintiff has already requested injunctive relief against any infringers, should the patent be held valid. This court agrees with the Technograph court, supra, that the fact that damages are being requested in these infringement actions does not prevent this suit from being maintained as a class action under 23(b) (2).

Since this court has determined that this class action is proper on the patent issues under either Rule 23(b) (1) (A), (b) (1) (B), or (b) (2), there is no need to consider the defendants' suggestion that if the class action is maintained, that it be maintained under Rule 23(b) (3). This would allow those members of the class who did not wish to be bound by the adjudication to exclude themselves from the patent class. While the court in Technograph, supra, did carve out three sub-classes which fell within Rule 23(b) (3), this was done in order to allow already filed actions to proceed elsewhere, if the party so desired. There is no such situation in the instant case.

▮ This brings the court to the problem of the scope of the class, which is this court's responsibility to define. Rule 23(c) and (d). There is only one patent in this suit. The class will clearly include those who are alleged direct infringers. It appears to this court reasonable that the class also include those who have allegedly contributorily infringed or have induced infringement, thereby making them liable for the direct infringement. There is no need to add, as the plaintiff urges, that those

who conspired to induce infringement or conspired to do any acts to cause infringement, directly or indirectly, should be members of the class. The class is broad enough to include all those who might be liable, without adding the confusing language of "conspiracy" and the issues that that word connotes.

The plaintiff also wishes to exclude those companies from the class action who have taken licenses or received from the plaintiff covenants not to sue. Since this is still a small number of companies, and any future licenses must be approved by the court, this court agrees to their exclusion.

## VENUE

■ There remains the difficult question of venue over nonrepresentative-party class members in this patent case. There is no dispute that venue must be established over the representative parties under 28 U.S.C. § 1400(b). This is admitted and emphasized by the pending motion of Pioneer Hi-Bred Corn Co. to dismiss for lack of venue. However, as the defendants point out, there is a unique situation here: If the Pioneer motion is granted and Pioneer is dismissed as a representative party, Pioneer would still be bound as a nonparty defendant if the class action were sustained. However, this result is compelled by the very nature of a class action, that is, to bind parties not before the court in person.

The Supreme Court has ruled, albeit not in a class action situation, that the patent venue statute is exclusive and must be satisfied as to all defendants. Fourco Glass Co. v. Transmirra Products Corp., 353 U.S. 222, 229, 77 S.Ct. 787, 1 L.Ed.2d 786 (1957). The Supreme Court has also ruled that with regard to the aggregation of separate claims in a class action under Rule 23, Rule 82 forbids the expansion of the term "matter in controversy" to allow the aggregation of the claims in such suits to reach the jurisdictional amount. Snyder v. Harris, 394 U.S. 332, 89 S.Ct. 1053, 22 L.Ed.2d 319 (March 25, 1969).

The defendants argue that since Rule 82 also says that the federal rules "shall not be construed to extend or limit" the venue of actions, as well as jurisdiction, the valid venue objections of the nonparty class members should also be sustained. However, this court concludes that venue need not be established as to those nonrepresentative-party class members, since to do so would eliminate the use of the class action route in all cases where a defendant class is appropriate. The defendants further suggest that only in patent cases (or other cases with special venue statutes) should venue be satisfied. However, this overlooks the general wording in Rule 82 that "venue" shall not be extended or limited. It does not say that only special venue statutes cannot be extended or limited. If the defendants are correct in their argument, then venue will have to be satisfied in all defendant class actions, thus defeating the effectiveness of the class action device. This court cannot find a justification for so doing.

## ANTITRUST CLASS ACTION

■ The defendants have also opposed the maintenance of a class action on the antitrust issues raised by the plaintiff. The same four criteria must be satisfied initially as were set forth in the above discussion of the patent class action.

The antitrust claims center around what is alleged to be an illegal conspiracy to oppose the plaintiff's patent. The participants in this alleged conspiracy are claimed to be almost coextensive with the membership of the defendant American Seed Trade Association. Since this means that several hundred firms and individuals may be involved, the class members are so numerous that joinder is impractical. Rule 23(a) (1). See, e. g., Cypress v. Newport News General and Nonsectarian Hospital Ass'n., 375 F.2d 648 (4th Cir. 1967); Clemens v. Central Railroad Co. of New Jersey, 264 F.Supp. 551 (E.D.Pa.1967); Bowe v. Colgate-Palmolive Co., 272 F. Supp. 332 (S.D.Ind.1967); State of Illi-

nois v. Harper & Row Publishers, Inc., 301 F.Supp. 484.

There are common questions of law and fact in that, in one way or another, all the class members are alleged to have participated in the conspiracy to oppose the plaintiff's patent. Rule 23(a) (2). The defenses to the charge of conspiracy are also typical of the defenses of the class. Although there is the individual issue of participation in the conspiracy, it is clearly alleged that the representative defendants and most of the other potential class members have been engaged in some activity in opposition to this patent. As such, all proper class members will be expected to defend on the ground that whatever joint effort took place was not illegal. Rule 23(a) (3). Finally, since it is alleged and appears that many of the representative parties have engaged in some joint effort to oppose the patent, it is this court's conclusion that they will more than adequately and fairly protect the interests of the other class members. As was indicated earlier, the size of the record in the prior case, and the undoubted competence of counsel in both cases convinces this court that the case will be pursued diligently and thoroughly. Rule 23(a) (4). *Cf.* Siegel v. Chicken Delight, Inc., 271 F.Supp. 722, 727–728 (N.D.Cal.1967); State of Illinois v. Harper & Row Publishers, Inc., *supra,* at 487.

While one court has recognized the possibility of maintaining an antitrust class action under the compulsory class, Rule 23(b) (1) (A), Minnesota v. United States Steel Corp., 44 F.R.D. 559, 568 (D.Minn.1968), most if not all the cases filed to date have been allowed under 23(b) (3), the so-called "exclusionary" class action. This section provides:

"(b) *Class Actions Maintainable.* An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:

\* \* \* \* \* \*

"(3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the \* \* \* defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action."

This court agrees that (b) (3) is the proper section.

## COMMON QUESTIONS PREDOMINATE

The single most important issue is whether there existed a conspiracy in violation of the antitrust laws. In addition, as pointed out above, the defenses expected, outside of nonparticipation, will be common to the class. *Cf.* Eisen v. Carlisle and Jacquelin, 391 F.2d 555, 565–566 (2d Cir. 1968); Philadelphia Electric Co. v. Anaconda American Brass Co., 43 F.R.D. 452, 458 (E.D.Pa. 1968); State of Illinois v. Harper & Row Publishers, Inc., *supra,* 488.

Each member of the alleged conspiracy may have individualized issues, such as proof of its participation in the conspiracy, and its share in whatever damages are recoverable, but overriding these individual questions are the common questions as to whether any joint action taken was in violation of the antitrust laws and what damages, if any, the plaintiff has suffered. But even given the fact that the litigation will not be at an end once the common issues have been determined, it is also true that in order to maintain a class action under Rule 23(b) (3), "[t]he common issues need not be dispositive of the

entire litigation." Dolgow v. Anderson, 43 F.R.D. 472, 490 (E.D.N.Y.1968), as quoted in State of Illinois v. Harper & Row Publishers, Inc., *supra*, at 489, and cases cited therein. Given the patent nature of the foundation of this action, and its firm link with the class action on the patent phases of this case, it seems clear to this court that the common questions predominate over any questions affecting only individual members. Of course, any class member which does not wish to take advantage of the representation in this forum and the possibility of ending this litigation once and for all, may choose to exclude itself from the binding effect of any judgment. Rule 23(c) (2). This class member is still subject to suit later on, since it would be without the substantial protection a judgment in this forum might afford it. In addition, as the defendants' briefs suggest, the defendants plan on filing antitrust counterclaims against the plaintiff. This, too, is another common question which could be conveniently disposed of here.

## CLASS ACTION SUPERIOR

The common core of law and fact relating to the conspiracy demonstrates that the class action device would be efficient. Hohmann v. Packard Instrument Co., 399 F.2d 711, 715 (7th Cir. 1968); State of Illinois v. Harper & Row Publishers, Inc., *supra*, at 489. The fact that the plaintiff has not filed many suits around the country has been mainly due to the pendency of of the prior validity suit in this forum coupled with the present class action, *now consolidated with that prior suit.* The number of class members shows that there are many potential suits that the plaintiff could file. The *history of the schoolbook conspiracy cases as related in State of Illinois v. Harper & Row Publishers, Inc., supra, at 489,* shows that after one court ruled that a *class action was not proper,* School Dist. of Philadelphia v. Harper & Row Publishers, Inc., 267 F.Supp. 1001 (E.D.Pa.1967), such a plethora of suits were filed all over the country that the machinery of the Panel on Multi-District Litigation had to be called upon to disentangle the jumble. This possibility can be avoided in this case, if most potential class members remain in this suit. If they opt out, however, they do so with this consideration in mind, and take the resultant risks.

Further, assuming that the defendant class did not conspire illegally, they will not be subjected to the expensive ordeal of continually having to demonstrate their innocence at trial. Nor will they be exposed to the possibility that inconsistent results might exist, if other litigation is begun, either before or after the completion of the proceedings in this case. *Cf.* State of Illinois v. Harper & Row Publishers, Inc., *supra*, at 491–492.

Although there may be difficulties encountered in managing this antitrust suit as a class action, as the court pointed out in *Technograph, supra,* 285 F. Supp. at 724–725, "the difficulties likely to be encountered in the management of a class action are not important when weighed against the benefits to the class, and any subclasses thereof, and to the administration of justice." This court agrees.

■ The defendants have challenged the class action on the ground that most if not all the antitrust class actions which have been allowed to date have been on behalf of plaintiff classes, and therefore have no relevance to this suit against a defendant class. However, this overlooks the explicit wording in Rule 23 that "members of a class may sue *or be sued* * * *," and that "the claims *or defenses* of the representative parties are typical of the claims *or defenses* of the class * * *." (Emphasis added) Thus, if the general and specific requirements of Rule 23 can be met, as they have been here, the fact that the class is a defendant class is not an independent ground for opposing the maintenance of the class action. See, *e. g.,* Washington v. Lee, 263 F.Supp. 327, 330–331 (M.D.Ala. 1966), affirmed *sub nom.* Lee v. Washington, 390 U.S. 333, 88 S.Ct. 994, 19 L.

Ed.2d 1212 (1968); Advertising Specialty National Association v. Federal Trade Commission, 238 F.2d 108, 119–120 (1st Cir. 1956).

The defendant also argues that venue must be established as to all nonrepresentative-party class members on the antitrust issues. 15 U.S.C. § 15. This argument is subject to the same infirmities as the defendants' argument on venue with regard to the patent class action. With the appropriate modifications, the discussion above on the patent class action venue problem is adopted here.

### ALTERNATE PROCEDURE

The plaintiff has made another suggestion to avoid some of the pitfalls and expenses involved in maintaining this suit as a class action. It contends that there has been such control over the litigation by the members of the ASTA, that they would be bound by any judgment rendered in the earlier-filed *Pfister* case. However, the plaintiff has had information that could support such a theory since 1964, or at least well before the filing of the class action in 1968. The plaintiff explains this by saying that "new" evidence has come to light in its discovery efforts against Pioneer in this case on Pioneer's venue motion, and in a contract case against one of its licensees, Funk Brothers Seed Company. But even assuming that this evidence came to light recently, this still does not mean that such a finding of control is proper at this time.

The *res judicata* effect of a prior judgment is usually decided by the reviewing court, and not by the court rendering the original decision. It is true, as plaintiff suggests, that such control as alleged might well subject those in control to the terms of the judgment rendered. However, this would require this court to stop consideration of the issue of validity and hold a hearing on the issue of control before the judgment sought to be binding is rendered. To this court, an ancillary proceeding such as this would be premature, at the very least, if not prohibited. *E. g.*, G. & C. Merriam Co. v. Saalfield, 241 U.S. 22, 36 S.Ct. 477, 60 L.Ed. 868 (1916).

It is therefore ordered that the defendants' motions to strike or dismiss be, and they are hereby denied.

It is further ordered that on the patent phases of this case, this action be, and it is hereby maintained as a class action under subdivisions (b) (1) and (b) (2) (independently and jointly) of Rule 23, Federal Rules of Civil Procedure.

It is further ordered that on the antitrust issues of this case, this action be, and it is hereby maintained as a class action under subdivision (b) (3) of Rule 23, Federal Rules of Civil Procedure.

It is further ordered that discovery on the antitrust issues be, and is hereby opened to both sides.

It is further ordered that the plaintiff submit an amended list of suggested class members to whom notice should be sent, indicating whether they are members of the patent class (and designated as direct, contributory or "inducing" infringers) or the antitrust class, or both, within 10 days from the date of this order, the defendants to respond to such amended list within 10 days thereafter, and the plaintiff to reply within five days thereafter.

It is further ordered that the parties simultaneously submit memoranda on their views as to the procedure to be followed as to exclusion under the antitrust class action, and the necessity or desirability of notice, by publication or otherwise, to the members of the patent class, within 20 days from the date of this order.

It is further ordered that this court does hereby retain jurisdiction under subdivision (c) (1) of Rule 23 to correct, modify, annul, vacate and supplement this order from time to time before the decision on the merits of the common questions as it may deem proper.