**Juan Valderrama RIOS, et al., Plaintiffs,**

**v.**

**Secretary of Labor F. Ray MARSHALL, et al., Defendants.**

**No. 79 Civ. 5711.**

United States District Court, S.D. New York.

Dec. 12, 1983.

400

Mid-Hudson Legal Services, Inc., Farm-worker Project, Howard Schell Reilly, Anthony Szczygiel, Newburgh, N.Y., for plaintiffs.

Thomas H. Belote, Sp. Asst. U.S. Atty., New York City, Charles S. Fax, Chapman, Duff & Paul, Washington, D.C., Joseph Kevin McKay, Hays, St. John, Abramson & Heilbron, New York City, Gretchen Cole-Marti, Puerto Rico Legal Services, Migrant Div., Rio Piedras, P.R., Kenneth Hart, Jr., State of Fla. Dept. of Labor & Employment Sec., Tallahassee, Fla., Jeffrey Slonim, Asst. Atty. Gen., N.Y.S. Dept. of Law, New York City, S. Steven Karalekas, Thomas J. Bacas, Charles, Karalekas & Bacas, Washington, D.C., John Witmeyer, Charles Booth, Ford, Marrin, Esposito & Witmeyer, New York City, Daniel Sullivan, Murray, Hollander & Sullivan, New York City, Morris Kletzkin, Friedlander, Misler & Friedlander Sloan &

Herz, Washington, D.C., Charles Kelso, Ann Margaret Pointer, Fisher & Phillips, Atlanta, Ga., Sanford A. Bell, Teitler & Teitler, New York City, for defendants.

## OPINION

GAGLIARDI, District Judge.

This action was commenced by thirty-eight United States citizen migrant farmworkers, who allege that seven New York apple growers, two New York apple growers' cooperatives (collectively referred to as the "New York apple defendants"), and their agents, including two Florida sugar cane growers' associations (collectively referred to as the "Florida sugar defendants"), conspired to replace plaintiffs in the New York apple harvest with temporary foreign workers from Jamaica.[1] Named as defendants in addition to the New York apple defendants and the Florida sugar defendants are officials of the United States Department of Labor, the United States Immigration and Naturalization Service, and the New York Department of Labor (collectively referred to as the "government defendants"), who allegedly failed to fulfill their statutory duties and aided the aforementioned conspiracy.[2] Plaintiffs' claims arise under section 1 of the Sherman Act, 15 U.S.C. § 1; 42 U.S.C. § 1985(3); the Immigration and Nationality Act, 8 U.S.C. § 1101 et seq.; and the Wagner Peyser National Employment System Act, 29 U.S.C. § 49 et seq. ("Wagner Peyser Act"). Plaintiffs have moved pursuant to Rule 23, Fed.R.Civ.P., for the certification of both a plaintiff and a defendant class.

At issue in this action are the interstate clearance system for recruitment of citizen workers and the temporary foreign worker certification program, both of which were established pursuant to the Wagner Peyser Act. The workings of the interstate clearance system and the certification program are described in detail in the court's decision with regard to the motions to dismiss this action, *Rios v. Marshall*, 530 F.Supp. 351, 356–57 (S.D.N.Y.1981), and that description will only be summarized briefly here. The programs at issue provide that a United States employer may secure the admission of foreign workers only after the employer has attempted to hire citizen workers by filing job offers, called "clearance orders," with the state employment services. The employer may not offer the foreign workers terms and conditions of employment more favorable than those offered domestic workers. 43 Fed.Reg. 10313 (1978).

The named plaintiffs are United States citizen migrant farmworkers, each of whom worked for at least one of the New York apple defendants during at least one of the apple harvests between 1977 and 1979. Plaintiffs claim that the New York apple defendants and the Florida sugar defendants conspired to avoid the requirements of the programs described above. Plaintiffs allege first that the New York apple defendants, in violation of section 1 of the Sherman Act, 15 U.S.C. § 1, conspired to depress the domestic job market for the annual New York apple harvest during the years from 1975 to 1979 by offering plain-

1. The New York apple defendants are Altamont Farms, Inc.; William Paladino, Jr.; Merritt Hart; S & A Chaissan & Sons, Inc.; Leland J. Behnke; Elizaville Fruit & Freezer, Inc.; Charles Ferrone; A. Goode & Son; Adrian F. Goode; Michael Nardone d/b/a Michael Nardone Cold Storage; Stanley Orchards, Inc.; Stanley Cohn; Lester Cohn; Mid-Hudson Growers Cooperative, Inc.; Charles Andola; Valley Growers Cooperative, Inc.; and Ashton Hart. The Florida sugar defendants are the Florida Fruit and Vegetable Association; George Sorn; the Florida Sugar Producers Association; Earl Morrison; and William H. Merenda d/b/a/ Merenda & Co. The New York apple defendants and the Florida sugar defend-

ants will sometimes be referred to collectively as the "private defendants."

2. The government defendants are: Raymond J. Donovan, Secretary of Labor; Thomas E. Hill, Deputy Regional Administrator, United States Department of Labor; William French Smith, Attorney General of the United States; Doris Meissner, Acting Commissioner, Immigration and Naturalization Service ("INS"); Charles C. Sava, District Director, INS for the Port of New York; Philip Ross, Industrial Commissioner, State of New York; and Raymond C. Sieger, Rural Manpower Supervisor, New York State Department of Labor.

tiffs housing, food, transportation and other working conditions of an artificially low quality.[3] Plaintiffs claim that the conspiracy enabled the New York apple defendants to offer non-competitive employment conditions and thereby furthered those defendants' goal of replacing United States workers in the apple harvests with foreign laborers. *See Rios v. Marshall, supra,* 530 F.Supp. at 357–58. Plaintiffs also allege that during the harvests at issue, defendants, in violation of the Wagner Peyser Act, offered more favorable living and employment conditions to foreign workers. Plaintiffs further contend that this alleged conspiracy to deprive them of their federal rights on the basis of their national origin violates 42 U.S.C. § 1985(3), which prohibits two or more persons from conspiring to deprive any person of equal protection of law. *See Rios v. Marshall, supra,* 530 F.Supp. at 362–63.

Plaintiffs allege further that the Florida sugar defendants participated in the conspiracy described above by serving as multi-employer bargaining agents for all United States employers of temporary foreign labor in negotiations with the British West Indian government concerning the terms of employment for Jamaican workers in the New York apple harvests. Finally, plaintiffs claim that the government defendants furthered this conspiracy by failing to fulfill their statutory duties to protect the rights of citizen laborers. For example, plaintiffs charge that certain officials of the New York and United States Departments of Labor accepted or distributed clearance orders for citizen labor which had the effect of discriminating against plaintiffs. Plaintiffs also allege that the government defendants did not investigate plaintiffs' administrative complaints with regard to the interstate clearance system for recruitment of agricultural workers.

### Discussion

Plaintiffs have moved for certification of a plaintiff class comprised of

all U.S. migrant farmworkers who, from 1975 to 1979, were employed or applied for employment in the New York apple harvest with defendant growers, co-operatives, or defendant class [of New York apple growers who applied for certification for the use of temporary foreign workers], and who suffered unlawful treatment in respect to working and living conditions by said defendants as well as ... those U.S. migrant farmworkers who would have applied for employment in this period but who were discouraged from doing so by said defendants' unlawful acts.

Pursuant to Rule 23(c)(4), plaintiffs have requested that this class be broken into two sub-classes: "Puerto Rico-based migrant farmworkers" and "Florida-based migrant farmworkers."

Rule 23 authorizes the certification of a class which meets all the conditions set forth in subdivision (a) of that rule and one of the alternative requirements set forth in subdivision (b).[4] The court will consider the

---

**3.** The court has dismissed all claims regarding the wages paid to plaintiffs. *See Rios v. Marshall, supra,* 530 F.Supp. at 359, 363.

**4.** Rule 23(a) and (b) provide in relevant part:
 (a) *Prerequisites to a Class Action.* One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.
 (b) *Class Action Maintainable.* An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:

 * * * * * *

 (2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or
 (3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members

proposed plaintiff classes according to these criteria and then turn to plaintiff's request for certification of a defendant class.

## A. *Plaintiff Class in Claims against Private Defendants*

Plaintiffs argue that, with respect to the claims against the private defendants, the proposed plaintiff class fulfills the four requirements of Rule 23(a) as well as the requirement of Rule 23(b)(3). As an initial matter, the private defendants object that the proposed plaintiff class is too amorphous to permit certification in that it includes citizen laborers who never applied for work in the relevant apple harvests. Although Rule 23 does not expressly discuss the need to define a class with specificity, it nevertheless has been held that a proposed class must be clearly defined in order to make it "administratively feasible for the court to determine whether a particular individual is a member." 7 C. Wright and A. Miller, *Federal Practice and Procedure* § 1760 at 581 (1972). *See Simer v. Rios,* 661 F.2d 655, 669 (7th Cir.1981), *cert. denied,* 456 U.S. 917, 102 S.Ct. 1773, 72 L.Ed.2d 177 (1982); *Rappaport v. Katz,* 62 F.R.D. 512 (S.D.N.Y.1974).

Identification of United States citizens farmworkers who were deterred by defendants' alleged discrimination from applying for jobs in the apple harvests at issue would prove an impossible task. *See Quigley v. Braniff Airways, Inc.,* 85 F.R.D. 74, 84 (N.D.Tex.1979); *Capaci v. Katz & Besthoff,* *Inc.,* 72 F.R.D. 71 (E.D.La.1976). Determination of such class members would be difficult in part because of the size of the geographic area where these individuals reside. Plaintiffs have requested the division of the plaintiff class into the sub-classes of "Florida-based" migrant workers and "Puerto Rico-based" workers. These groups evidently include individuals residing outside of those states, for plaintiffs allege that the unnamed class members "are located in many parts of the United States."[5] However, even assuming that plaintiffs propose to limit class membership to individuals residing in Florida and Puerto Rico, the court and the parties would still have the Sisyphean task of identifying those individuals who knew of the alleged discrimination and therefore were discouraged from applying for employment in the apple harvest. *See Simer v. Rios, supra,* 661 F.2d at 669. The task of identifying the discouraged workers is particularly difficult because the difference between those individuals and all other citizen migrant farmworkers turns on the state of mind of the putative class members. Although it is not rare for courts to make determinations as to the state of mind of a particular party, the proposed definition would require the court to make an unmanageable number of such determinations.[6] The court concludes that these problems require that citizen migrant workers who never applied for work with the New York apple defendants

---

of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

**5.** Included as named plaintiffs are residents of North Carolina, New York, Mississippi and Tennessee.

**6.** Plaintiffs cite *International Brotherhood of Teamsters v. United States,* 431 U.S. 324, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977) in which the Supreme Court authorized class-based relief

for individuals deterred by a company's discriminatory conduct from applying for certain positions. In that case, the class of deterred job-seekers was limited to those individuals already working for the defendant employer, thereby narrowing "what might otherwise be an impossible task." *Id.* at 368 n. 52, 97 S.Ct. at 1871 n. 52. The group of deterred employees in the instant case is not so limited. The classes certified in the other cases which plaintiffs cite included not deterred non-applicants but rather future applicants for jobs with the defendant employers. *See Rosario v. New York Times,* 21 Fair Empl.Prac.Cas. (BNA) 493 (S.D.N.Y.1979); *Capers v. Long Island Railroad,* 6 Fair Empl.Prac.Cas. (BNA) 30, 34 (S.D. N.Y.1973); *Kohn v. Royall, Koegel & Wells,* 59 F.R.D. 515, 523 n. 1, (S.D.N.Y.1973), *appeal dismissed,* 496 F.2d 1094 (2d Cir.1974).

be excluded from the plaintiff class in this action. *See Simer v. Rios, supra,* 661 F.2d at 669 and n. 25.

### (1) *The Four Requirements of Rule 23(a)*

The court will next consider those standards for class certification specifically set forth in Rule 23, beginning with the four requirements of subdivision (a).

#### (a) *Numerosity*

■■■ Even when those deterred from applying for work in the apple harvest are excluded, the proposed plaintiff class is "so numerous that joinder of all members is impracticable." Rule 23(a)(1). The subclass of Puerto Rico-based citizen farmworkers alone includes 386 individuals who actually worked in the New York apple harvest in 1978 and another 225 who were assigned by the Puerto Rico Department of Labor to that harvest but who never left for the mainland. In 1979, some 3,500 citizen migrant farmworkers were employed in the Hudson/Champlain Valley apple orchards. The proposed plaintiff class plainly satisfies the numerosity requirement of Rule 23(a)(1).[7]

#### (b) *Adequacy of Representation*

■■ Rule 23(a)(4) provides that the named plaintiffs must "fairly and adequately protect the interests of the class." This provision requires the named plaintiffs to be members of the proposed class and to have standing to litigate the issues raised on behalf of the class. *See* 3 B *Moore's Federal Practice* § 23.04[2] (2d ed. 1978).

■■■ Defendants argue that each of the named plaintiffs worked for only one of the New York apple defendants and consequently lacks standing to assert claims on behalf of the unnamed plaintiffs who worked for the other defendants. Defend-

ants are correct in arguing that a class representative generally can sue only those defendants who have injured him directly and cannot represent unnamed class members in claims against the other defendants. *See Ambook Enterprises v. Time, Inc.,* 612 F.2d 604, 608 (2d Cir.1979), *cert. dismissed,* 448 U.S. 914, 101 S.Ct. 35, 65 L.Ed.2d 1179 (1980); *LaMar v. H & B Novelty & Loan Co.,* 489 F.2d 461 (9th Cir.1973); *Vulcan Society v. Fire Department of White Plains,* 82 F.R.D. 379, 398 (S.D.N.Y.1979). However, as defendants recognize, where a complaint properly alleges a conspiracy by several defendants, a plaintiff injured by one of the defendants as a result of the conspiracy has standing to sue the co-conspirator defendants even though that plaintiff had no direct dealings with the co-conspirators. Such a plaintiff therefore has standing to represent a class of individuals injured by any of the defendants as part of the conspiracy. *See Sommers v. Abraham Lincoln Federal Savings and Loan Association,* 66 F.R.D. 581, 588 (E.D.Pa.1975); *cf. Vulcan Society v. Fire Department, supra* (given failure adequately to plead a conspiracy among the defendant municipalities, each named plaintiff had standing to represent class only in claims against municipality for which that named plaintiff had worked).

■■ Defendants argue that the above-described principle does not apply to the instant case because plaintiffs have failed to plead properly a conspiracy by the defendants. The Second Circuit repeatedly has found inadequate complaints which plead conspiracy in vague or conclusory terms and which do not allege specific instances of misconduct in furtherance of the conspiracy. *See Ostrer v. Aronwald,* 567 F.2d 551, 553 (2d Cir.1977) and cases cited therein. Plaintiffs in the instant case, however, have described in detail the conduct by the defendants which plaintiffs claim constituted

---

7. With respect to the proposed subclass of Florida-based citizen migrant farmers, plaintiffs' have not submitted adequate evidence as to numerosity. Although New York apple growers submitted to the Florida Department of Labor job offers for approximately 2300 farmworkers, it is unclear how many citizen

laborers applied for or accepted such employment. Because plaintiffs have the burden of establishing the Rule 23 prerequisites to class certification, *see Greeley v. KLM Royal Dutch Airlines,* 85 F.R.D. 697, 700 (S.D.N.Y.1980), a subclass of Florida-based workers cannot be certified at this time.

the alleged conspiracy.[8] The court concludes that a conspiracy by the defendants has been pleaded properly and that the individual named plaintiffs therefore have standing to sue defendant apple growers for whom those plaintiffs did not work or apply for work.

The Florida sugar defendants assert two other bases for challenging the adequacy of plaintiffs as class representatives. Those defendants argue that the named plaintiffs seek abolition of the program for certification of foreign workers and that such abolition is contrary to the interests of many unnamed class members since the program assures that domestic farmworkers will be offered certain minimal employment conditions. Defendants also argue that the named plaintiffs lack the financial resources necessary to prosecute this litigation as a class action.

■ Rule 23(a)(4) has been held to require that the proposed class representatives not have interests antagonistic to those of the unnamed class members and that the class representatives have procured counsel capable of conducting the proposed litigation. *See Eisen v. Carlisle & Jacquelin,* 391 F.2d 555, 562 (2d Cir.1968). Contrary to defendants' arguments, the named plaintiffs in the instant action do not seek to advance interests contrary to those of unnamed class members. The record clearly demonstrates that the named plaintiffs are attempting to correct alleged violations of the laws governing certification of foreign migrant workers and do not seek the abolition of the program pursuant to which such workers are certified.

■ With regard to the named plaintiffs' ability to finance the class action litigation, plaintiffs have indicated that the cost of notice and other expenses incident to class certification can be advanced by the legal services programs which represent the named plaintiffs or which assist counsel for the named plaintiffs. Since plaintiffs remain ultimately liable for such costs and otherwise would not be able to maintain this action, the advance is permissible and, in this instance, satisfies the requirement that the interests of unnamed class members will be litigated adequately. *See P.D.Q. Inc. of Miami v. Nissan Motor Corp.,* 61 F.R.D. 372, 379 (S.D.Fla.1973).

### (c) *Common Questions of Law or Fact*

■ Rule 23(a)(2) requires that there be questions of law or fact common to the class members. In the instant case, it is evident that the section 1985(3) claims of the named plaintiffs and unnamed class members actually employed by the New York apple defendants present a number of common issues. The plaintiffs, in order to prevail on this claim, must prove that defendants conspired to deprive plaintiffs, as citizens, of employment rights guaranteed them by the Wagner Peyser Act. Factual questions regarding the alleged manifestations of this conspiracy are also common to members of the subclass. Were the Puerto Rico-based workers discharged en masse in 1978? Did the defendants provide transportation to the harvest for foreign workers and refuse to pay such costs for plaintiff class members? Were the housing, food and working conditions offered to the groups of domestic farmworkers inferior to those offered the Jamaicans? The antitrust claim raises similar common issues as to the existence of a conspiracy to depress the market for the employment of domestic farmworkers.

■ Defendants argue that regardless of the commonality of the claims of the named plaintiffs and the other putative class members who actually worked for the New York apple defendants, the questions presented by those plaintiffs do not overlap with those of the unnamed plaintiffs who applied for, but never obtained work in the

---

**8.** For example, plaintiffs allege that the New York apple defendants submitted to the state employment services job offers containing terms of employment for domestic farmworkers inferior to those terms offered to foreign workers. Plaintiffs also allege that those defendants stigmatized plaintiff class members as poor workers thereby justifying defendants' decision to boycott such workers and to exclude them from the labor market.

apple harvest. In support of their position defendants cite *General Telephone Co. of the Southwest v. Falcon,* 457 U.S. 147, 158, 102 S.Ct. 2364, 2371, 72 L.Ed.2d 740 (1982) in which the Supreme Court held the named plaintiff employee had not demonstrated that "the adjudication of his claim ... would require the decision of any common question" presented by the claims of un-named class members who were applicants never employed by the defendant company. The Supreme Court stated: "Significant proof that an employer operated under a general policy of discrimination conceivably could justify a class of both applicants and employees if the discrimination manifested itself in hiring and promotion practices in the same general fashion, such as through subjective decision making processes." *Id.* at 159 n. 15, 102 S.Ct. at 2371 n. 15.

Under the holding in *General Telephone v. Falcon,* the named plaintiffs in the instant case must demonstrate that the alleged discriminatory practices described above are relevant also to claims of the proposed class members who did not accept work because they were discouraged by news of defendants' alleged discriminatory conduct. The proposed class meets this requirement because the discouraged applicants must prove the same discriminatory practices charged by the plaintiffs who actually worked for the New York apple defendants, and then, in addition, the plaintiff applicants must prove that the knowledge of such practices deterred them from accepting work in the apple harvest. The named plaintiff employees of the New York apple defendants thus raise questions common to the claims of unnamed discouraged applicants for work in the apple harvest. *See Meyer v. Macmillan Publishing Co.,* 95 F.R.D. 411, 414–15 (S.D.N.Y.1982).[9]

(d) *Typicality.*

Rule 23(a)(3) requires that "the claims or defenses of the representative parties [be] typical of the claims or defenses of the class." Although the commonality requirement of Rule 23(a)(2) and the typicality requirement of Rule 23(a)(3) "tend to merge," *General Telephone v. Falcon, supra,* 457 U.S. at 157 n. 13, 102 S.Ct. at 2371 n. 13, those courts seeking to give independent meaning to the typicality requirement have examined whether the representative's claim requires substantially more or less proof than is required for the other members in the class. *See Amswiss International Corp. v. Heublein, Inc.,* 69 F.R.D. 663, 667 (N.D.Ga.1975); *In re South Central States Bakery Products, supra,* 86 F.R.D. at 416; *see also* 3B *Moore's Federal Practice,* § 26.-06 at 23–191 (2d ed. 1978).

 Plaintiffs have proposed a class definition so broad that, in certain respects, the claims asserted by the named plaintiffs are not necessarily typical since those claims require substantially different proof from that required for the claims of the unnamed plaintiffs. For example, with respect to the relevant time period, plaintiffs' proposed class definition includes all citizen migrant farmers who worked in or applied for work in the apple harvest from 1975 to 1979. The named plaintiffs, however, raise no claims regarding the apple harvests during the period from 1975 to 1977. Consequently, in order for the class to satisfy the typicality requirement, the court concludes that membership in the plaintiff class must be limited to those individuals who allegedly suffered discrimination with regard to the apple harvests from 1977 to 1979.

 Plaintiffs' proposed class definition is also overly broad in that it purports to include United States citizen farmworkers who, during the apple harvests in the

---

**9.** Although determination of the unnamed plaintiffs deterred from applying for work entails a finding as to the state of mind of those plaintiffs, inclusion of those individuals in the class does not render the class impermissibly amorphous. *See* discussion *supra* at p. 404. It appears that the court readily may ascertain from employment records the identi-

ties of these citizen farmworkers who did not accept their job offers with the New York apple defendants. The determination as to which of these applicants actually were deterred from accepting work with the New York apple defendants is a sufficiently circumscribed task to permit the inclusion of those applicants in the class. *See United States v. Teamsters, supra.*

relevant period, "suffered unlawful treatment in respect to working and living conditions." Presumably the claims of such a class would not be limited to individuals raising the section 1985(3) and antitrust claims raised by the named plaintiffs, but might also include claims that conditions in the apple harvest were unlawful in other respects. The class definition therefore should be limited to those individuals who were adversely affected by the practices of which the named plaintiffs complain. *See Meyer v. Macmillan Publishing, supra,* 95 F.R.D. at 412.[10] Defendants' other objections as to the typicality of the named plaintiffs are subsumed in the discussion concerning the predominance of common issues at pp. 17–21, *infra.*

### (2) *Rule 23(b)(3) Requirements*

With respect to their claims against private defendants, plaintiffs contend that the proposed class meets the third condition of Rule 23(b) which requires that "the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fair and efficient adjudication of the controversy."

### (a) *Predominance of Common Issues*

[17, 18] Although plaintiffs have established the existence of legal and factual issues common to class members, as is required by Rule 23(a)(2), *see* discussion at pp. 405–406, *supra,* they also must show that those common issues predominate for certification pursuant to Rule 23(b)(3). *See In re South Central States Bakery Products,* 86 F.R.D. 407, 415 (M.D.La.1980); *see also* 3B *Moore's Federal Practice* § 23.06–1 (2d ed. 1978). With respect to plaintiffs'

claims under section 1 of the Sherman Act, the private defendants argue that individual issues predominate over those common to the class. Defendants argue first that the instant case differs from the typical price-fixing class action in which the existence of the conspiracy to fix prices is an issue which predominates over any issue particular to the individual class members. Defendants claim that the conspiracy alleged in the instant case is a conspiracy to fix the terms and conditions of employment, which "unlike a price-fixing conspiracy, would not turn on the testimony of one plaintiff but would vary from plaintiff to plaintiff, grower to grower, year to year."

Those differences in the way in which an alleged conspiracy in restraint of trade is evidenced with regard to each class member "do not change the central and common element of [an antitrust case]—the question whether the defendants acted in concert to decrease competition among them. If this element is shown, differences in the way in which the plan was manifested are unimportant...." *In re Master Key Antitrust Litigation,* 70 F.R.D. 23 (D.Conn.1975), *appeal dismissed,* 528 F.2d 5 (2d Cir.1975); *see In re Alcoholic Beverages Litigation,* 95 F.R.D. 321, 326–27 (E.D.N.Y.1982); *Shelter Realty Corp. v. Allied Maintenance Corp.,* 75 F.R.D. 34, 37 (S.D.N.Y.1977), *appeal dismissed,* 574 F.2d 656 (2d Cir.1978). As discussed *supra* at pp. 402–403, plaintiffs in the instant case have alleged that defendants joined in a single conspiracy to lessen competition in the market for domestic migrant farmers in the New York apple harvest.[11] If the named plaintiffs can establish that the defendants' treatment of them evidenced such a conspiracy, they will have established an issue central to the claim of each of the unnamed class mem-

---

**10.** In addition, certain named plaintiffs are barred by prior judgments from asserting a section 1985(3) claim in this action. *See Rios v. Marshall, supra,* 530 F.Supp. at 364 & n. 11. Those named plaintiffs, obviously, cannot serve as class representatives with regard to those claims.

**11.** The instant case therefore is distinguishable from the antitrust cases relied upon by defend-

ants in which the existence of multiple conspiracies or multiple geographical product markets precluded a finding of the predominance of issues common to all plaintiff class members. *See Kendler v. Federated Department Stores, Inc.,* 88 F.R.D. 688 (S.D.N.Y.1981); *Hettinger v. Glass Specialty Co.,* 59 F.R.D. 286 (N.D.Ill. 1973).

bers. *See Professional Adjusting Systems of America, Inc. v. General Adjustment Bureau, Inc.,* 64 F.R.D. 35, 40–42 (S.D.N.Y. 1974).[12]

Defendants argue that even if the proof of a conspiracy is central to each class member's claim, individual issues nevertheless predominate over those common to class members. In particular, defendants contend that a plaintiff seeking to establish a violation of the antitrust laws must demonstrate that he suffered economic injury, and the determination of the injuries suffered by the members of the putative class necessarily must be made on an individual basis.

In order to recover on their antitrust claims, plaintiffs, as private individuals, must establish not only a violation of the antitrust laws but also the fact of impact or injury. *See Zenith Radio Corp. v. Hazeltine Research, Inc.,* 395 U.S. 100, 114 & n. 9, 89 S.Ct. 1562, 1571 & n. 9, 23 L.Ed.2d 129 (1969). Consequently

> Allegations of antitrust conspiracy are not alone sufficient to establish a preponderance of common questions.... On the contrary, it is appropriate to look beyond the simple allegation of conspiracy to determine whether the "impact" or "injury" said to have resulted from the conspiracy seems likely to be established on a class-wide basis.

*In re Alcoholic Beverages Litigation, supra,* 95 F.R.D. at 321. Predominance of common

issues is not defeated simply because the class members have incurred varying damages as a result of such common injury. *See Shelter Realty Corp. v. Allied Maintenance Corp., supra,* 75 F.R.D. at 37; *City of New York v. General Motors Corp.,* 60 F.R.D. 393, 395 (S.D.N.Y.1973), *appeal dismissed,* 501 F.2d 639 (2d Cir.1974).

In the instant case, plaintiffs claim that the alleged conspiracy had a common impact upon class members in several respects. For example, plaintiffs charge that the New York apple defendants refused to pay the transportation costs for citizen migrant farmworkers which those defendants provided for foreign workers. Plaintiffs also claim that, as a result of the alleged conspiracy, defendants solicited citizen farmworkers with job offers containing the same terms and conditions of employment, other than salary, which were inferior to those which plaintiffs would have been offered in the absence of such conspiracy. Whether the alleged conspiracy resulted in such impact can be determined on a collective basis, if not from the testimony of class members, then from defendants' own records.[13] Accordingly, although the class members may prove varying damages resulting from these and other injuries attributable to the alleged conspiracy, such differences do not preclude a finding that the proposed class meets the predominance requirement of Rule 23(b)(3).[14]

**12.** Defendants argue that the depositions of the named plaintiffs establish that the New York apple defendants' treatment of those workers varied to such an extent as to preclude a finding of conspiracy. Such an argument, however, concerns the merits of the case and is not relevant to the determination whether the question of the existence of the conspiracy predominates over individual issues affecting plaintiff class members. *See Shelter Realty v. Allied Maintenance, supra,* 75 F.R.D. at 37 (emphasis added) (existence of conspiracy is a predominating issue "when allegations of anti-competitive behavior embracing all of the various products and distribution patterns have been credibly *pleaded.*") (emphasis added).

**13.** The instant case thus is distinguishable from *Windham v. American Brands,* 565 F.2d 59 (4th Cir.1977), *cert. denied,* 435 U.S. 968, 98 S.Ct. 1605, 56 L.Ed.2d 58 (1978), cited by defendants,

in which the plaintiffs could plead no common impact or injury from an alleged conspiracy to control prices in tobacco auctions. Such an allegation was precluded by the great variety of geographical markets, daily price fluctuations and individualized systems for grading product quality. In the instant case, in contrast, plaintiffs allege that the private defendants treated farm labor as a generally fungible commodity, issuing uniform job offers for the three harvests at issue.

**14.** This determination does not preclude the possibility that, at a later stage in the proceedings, it may become evident that the individual issues have become more significant than the common questions of law and fact. The court retains the right to alter or reverse a class certification order prior to a decision on the merits. Rule 23(c)(1); *see Brady v. LAC,* 72 F.R.D. 22, 29 (S.D.N.Y.1976).

With regard to plaintiffs' section 1985(3) claim, defendants contend that common issues do not predominate because plaintiffs must establish defendants' discriminatory intent with respect to each class member, a showing which defendants argue, necessarily must be made on an individualized basis. Section 1985(3) requires proof of a conspiracy for the purpose of depriving "any person or class of persons of the equal protection of the laws or of equal privileges and immunities under the laws." *See United Brotherhood of Carpenters and Joiners, Local 610 v. Scott,* —— U.S. ——, 103 S.Ct. 3352, 77 L.Ed.2d 1049 (1983); *Griffin v. Breckenridge,* 403 U.S. 88, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971). Plaintiffs also must demonstrate a "class-based, invidiously discriminatory animus behind the conspirators' action." *Griffin v. Breckenridge, supra,* 403 U.S. at 102, 91 S.Ct. at 1798. Accordingly, plaintiffs must prove defendants' intent or motivation in effecting the alleged conspiracy rather than defendants' intent vis-a-vis each member of the plaintiff class. The court concludes that common questions regarding the existence of and motivation for the alleged conspiracy predominate over any questions particular to each class members' section 1985(3) claim.

#### (b) *Superiority of Class Action*

Class certification is available under Rule 23(b)(3) only when such treatment is "superior to other available methods" for the resolution of the dispute. Rule 23(b)(3) sets forth a number of criteria relevant to the determination whether class certification is the superior method for resolving the claims raised on behalf of unnamed plaintiffs.

With regard to the first of these criteria, the interest of class members in prosecuting their claims on an individual basis, there is no evidence that unnamed class members in the instant case have any interest in instituting or controlling individual actions. Moreover, the low income level of the members of the putative class and the relatively small amount likely in any individual recovery, the availability of treble damages notwithstanding, renders certification of a plaintiff class in this action particularly appropriate. *See Eisen v. Carlisle & Jacquelin, supra,* 391 F.2d at 567; *Shelter Realty v. Allied Maintenance Corp., supra,* 75 F.R.D. at 38.

Another factor relevant to the determination of the superiority of class action treatment of a particular case is "the extent and nature of any litigation concerning the controversy already commenced by or against members of the class." Rule 23(b)(3)(B). The pendency of related actions in certain instances may indicate that there are more appropriate vehicles than the proposed class action for vindicating the rights of putative class members. *See* 3B *Moore's Federal Practice* § 23.45[4.–2] at 23–364 to 23–365.

Defendants in the instant case cite a number of other actions allegedly concerning the same issues as are involved here and claim that those actions indicate that class certification here is inappropriate. Defendants cite *Alfred L. Snapp & Son, Inc. v. Puerto Rico,* 456 U.S. 592, 102 S.Ct. 3260, 73 L.Ed.2d 995 (1982), in which Puerto Rico, proceeding *parens patriae,* sought to enforce the rights under the Wagner Peyser Act and the Immigration and Nationality Act ("INA") of Puerto Rican migrant laborers in the Virginia apple harvest. The pendency of that case, however, has no bearing upon the appropriateness of class action resolution of the claims at issue here which concern harvests in New York. In *Puerto Rico v. Bramkamp,* 654 F.2d 212 (2d Cir.1981), *cert. denied,* 458 U.S. 1121, 102 S.Ct. 3509, 73 L.Ed.2d 1383 (1982), Puerto Rico, again proceeding *parens patriae,* sued New York apple growers, including certain named defendants in the instant case, for violating the Wagner Peyser Act and the INA by their treatment of Puerto Rican migrant farmers during the 1978 apple harvest. That litigation terminated in a consent decree in which the defendants, without admitting any wrongdoing, agreed not to violate the Wagner Peyser Act or the INA after the November 1982 date of the

decree. *See* Stipulation and Consent Decree, *Puerto Rico v. Bramkamp,* 79 Civ. 0199 (S.D.N.Y. November 23, 1982). The *Bramkamp* case, therefore, while arguably relevant to any injunctive relief against the private defendants to which plaintiffs here may be entitled, has no bearing on plaintiffs' claims for damages. Neither do any of the other cases cited by defendants, which raise only general issues about the nationwide administration of the foreign worker certification program, indicate that the claims of the putative class members here would be more efficiently resolved in some other context.[15]

Finally, in determining whether a class action is the superior method of adjudicating a controversy, the court must consider also "the difficulties likely to be encountered in the management of a class action." Rule 23(b)(3)(D). With regard to management of this case as a class action, defendants suggest a number of difficulties, particularly in providing notice to class members as is required by Rule 23(c)(2) when a class is certified pursuant to Rule 23(b)(3). Virtually all these objections pertain to the difficulties of notifying and managing a plaintiff class including citizen farmworkers deterred from applying for work in the apple harvests at issue. Those deterred workers, however, have been excluded from the plaintiff class. *See* discussion at p. 404, *supra.* Defendants' arguments pertaining to the effect of such individuals on the manageability of the class litigation consequently are moot.

 Defendants' principal argument with regard to the feasibility of a plaintiff class composed of citizen workers in the harvests and applicants for such work is that notwithstanding any showing of common injury under the antitrust laws, the computation of damages for class members will require an unmanageable number of individual determinations. Where there are predominating common issues, the requirement of individualized determinations as to damages does not necessarily render a class action unmanageable. *See In Re Antibiotic Antitrust Actions,* 333 F.Supp. 278, 289 (S.D.N.Y.), *modified on other grounds,* 333 F.Supp. 291 (S.D.N.Y.1971). In the instant case, many aspects of the damages alleged could be calculated on a generalized basis. For example, the costs of transportation to the harvests, if illegally withheld, could be calculated with regard to all plaintiffs travelling to New York from a particular area. The damages allegedly resulting from exposure to housing of an artificially depressed quality similarly could be calculated on a group basis for the plaintiff employees of each of the fewer than ten New York apple defendants. The possibility of individual damage calculations therefore does not present the likelihood of such administrative difficulties as to require denial of class certification at this time. *Cf. Abrams v. Interco, Inc.,* 719 F.2d 23 at 31 (2d Cir.1983) (determination of individual damages rendered unmanageable action by plaintiff class numbering in the millions, when the calculations "would be complicated by the scores of different products involved, varying local market conditions, fluctuations over time, and the difficulties of proving consumer purchases after a lapse of five to ten years.") The court concludes that certification of a plaintiff class will provide a superior method for resolving the claims against the private defendants.

B. *Plaintiff Class in Claims against Government Defendants*

 The plaintiffs have requested class certification pursuant to Rule 23(b)(2) for the claims against the government defendants. Parties seeking class certification pursuant to Rule 23(b)(2) must meet the four requirements of Rule 23(a) and, in addition, must demonstrate that "the party

---

**15.** The other cases cited by defendants involve challenges to the administration of the foreign labor certification program in other geographical areas. Those challenges are unrelated to the claims at issue here concerning the New York apple harvest. *See Hernandez Flecha v. Quiros,* 567 F.2d 1154 (1st Cir.1977), *cert. denied,* 436 U.S. 945, 98 S.Ct. 2846, 56 L.Ed.2d 786 (1978); *Williams v. Usery,* 531 F.2d 305 (5th Cir.), *cert. denied,* 429 U.S. 1000, 97 S.Ct. 527, 50 L.Ed.2d 610 (1976); *Elton Orchards, Inc. v. Brennan,* 508 F.2d 493 (1st Cir.1974).

opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." Rule 23(b)(2).

Defendants Philip Ross, Industrial Commissioner of the State of New York, and Raymond C. Seigler, Rural Employment Supervisor of the New York State Department of Labor (collectively referred to as "New York government defendants"), raise a number of objections to class certification with regard to the claims against them. First, the New York government defendants oppose inclusion in the class of those citizen migrant workers who never actually applied for employment in the apple harvest. Although notice and an opportunity to opt out of the class need not be afforded to members of a class certified pursuant to Rule 23(b)(2), *see Ives v. W.T. Grant Co.,* 522 F.2d 749 (2d Cir.1975), the membership of such a class still must be readily identifiable so that it is clear which individuals are bound by the judgment obtained in the class action. *See Walker v. Washington,* 75 F.R.D. 650, 653 (S.D.Ill.1977); *Koen v. Long,* 302 F.Supp. 1383 (E.D.Mo.1969), *aff'd* 428 F.2d 876 (8th Cir.1970), *cert. denied,* 401 U.S. 923, 91 S.Ct. 877, 27 L.Ed.2d 827 (1971). The reasons for excluding the non-applicants from the Rule 23(b)(3) class action against the private defendants thus are equally applicable to the proposed Rule 23(b)(2) class action against the government defendants. *See* discussion p. 404, *supra.* Moreover, the injunctive or declaratory relief which might be awarded to those deterred from applying almost certainly would be duplicative of the relief sought by the plaintiffs who had applied for or worked in the apple harvest. *See Quigley v. Braniff Airways, supra,* 85 F.R.D. at 84. The court concludes that those citizen migrant laborers who never applied for work in the relevant apple harvests must be excluded from any class certified in the action against the government defendants.

*(1) Rule 23(a) Requirements*

For the reasons discussed *supra* at pp. 405–406, the proposed plaintiff class in the action against the government defendants meets the numerosity requirement of Rule 23(a)(1) and the adequacy of representation requirement of Rule 23(a)(4). With regard to the common question requirement of Rule 23(a)(2), *see* discussion pp. 405–406, *supra,* the named plaintiffs have demonstrated that the members of the proposed class present a number of common questions of law and fact in the claims against the government defendants. For example, all plaintiffs raise the issue of whether officials of the United States Department of Labor arbitrarily and capriciously determined that insufficient numbers of citizen migrant farmers were available for the relevant apple harvest, thereby permitting the New York apple defendants to recruit foreign workers. Also common to all class members is the question whether the New York government defendants accepted job offers containing work conditions violative of the rights of citizen migrant workers under the Wagner Peyser Act.

The proposed class action against the government defendants also meets the typicality requirement of Rule 23(a)(3), *see* discussion pp. 405–407, *supra,* for the proof of the claims of the named plaintiffs will be substantially the same as the proof required for the claims of unnamed class members. The court concludes that with regard to the claims against the government defendants, the proposed plaintiff class meets the requirements of Rule 23(a).

*(2) Appropriateness of Class-Based Declaratory or Injunctive Relief under Rule 23(b)(2)*

The government defendants do not dispute that they have acted on grounds generally applicable to the class as is required under Rule 23(b)(2). Class-based injunctive or declaratory relief therefore may be appropriate should the conduct of the government defendants be found to be illegal. *See* 3B *Moore's Federal Practice* §§ 23.40[2] and 23.40[3].

412

■ The New York government defendants argue that certification of a plaintiff class pursuant to Rule 23(b)(2) is unnecessary in that any injunctive or declaratory relief granted to the named plaintiffs in the claims against the government defendants would inure to the benefit of all members of the requested class. Certification of a Rule 23(b)(2) class can be denied where defendants who are government officials or entities affirmatively have indicated their intention to be bound in their treatment of all putative class members by a decision in favor of the named plaintiffs. Where such defendants have not represented that intent on the record, class certification is appropriate to guarantee that a decision in favor of the named plaintiffs will benefit all class members. *See Hurley v. Ward,* 584 F.2d 609, 611–12 (2d Cir.1978); *Galvan v. Levine,* 490 F.2d 1255, 1261 (2d Cir.1973), *cert. denied,* 417 U.S. 936, 94 S.Ct. 2652, 41 L.Ed.2d 240 (1974); *Lucas v. Wasser,* 73 F.R.D. 361, 363 (S.D.N.Y.1976). Because the government defendants in the instant case have not made such a representation, class certification pursuant to Rule 23(b)(2) of the claims against them is warranted. This determination is made without prejudice to the government defendants' right to move for class decertification in the claims against them, should the government defendants agree to be bound on a class-wide basis by the court's decision regarding the named plaintiffs.

C. *Defendant Class*

■ Plaintiffs also have requested certification of a defendant class comprised of "all New York apple growers who have applied for the use of temporary foreign workers from 1975 to the present." Like a plaintiff class, a defendant class may be certified pursuant to Rule 23 only if it meets each of the four requirements of Rule 23(a) and also fulfills one of the three criteria of Rule 23(b). *See Marcera v. Chinlund,* 595 F.2d 1231, 1237 (2d Cir.), *judgment vacated on other grounds sub nom. Lombard v. Marcera,* 442 U.S. 915, 99 S.Ct. 2833, 61 L.Ed.2d 281 (1979).

■ Because the proposed defendant class in the instant case does not meet the typicality requirement of Rule 23(a), the court will discuss only that criterion. With regard to defendant classes, the typicality requirement of Rule 23(a)(3) has been held to require a showing that the named defendants, by pursuing their own interests vigorously, "will *necessarily* raise ... defenses common to the class." *United States v. Trucking Employers, Inc.,* 75 F.R.D. 682 (D.D.C.1977) (emphasis in original); *see In re The Gap Stores Securities Litigation,* 79 F.R.D. 283, 302–303 (N.D.Cal.1978). Courts generally have been reluctant to certify defendant classes in actions alleging antitrust conspiracies. *See Kline v. Coldwell, Banker & Co.,* 508 F.2d 226 (9th Cir.1974), *cert. denied,* 421 U.S. 963, 95 S.Ct. 1950, 44 L.Ed.2d 449 (1975). This reluctance stems, in part, from the ability of any named defendant in such an action to concede the existence of the alleged conspiracy and to defend simply by denying his own participation in the conspiracy. *See Coniglio v. Highwood Services, Inc.,* 60 F.R.D. 359 (W.D.N.Y.1972); *Contract Buyers League v. F & F Investment,* 48 F.R.D. 7 (N.D.Ill. 1969); *cf. Management Television Systems, Inc. v. National Football League,* 52 F.R.D. 162 (E.D.Pa.1971) (certification of defendant class appropriate in antitrust action where the plaintiff has made a preliminary showing that the challenged practice is a matter of policy of the league comprised of defendant football clubs); *but see Research Corp. v. Pfister Associated Growers, Inc.,* 301 F.Supp. 497 (N.D.Ill.1969), *appeal dismissed sub nom. Research Corp. v. Asgrow Seed Co.,* 425 F.2d 1059 (7th Cir.1970).

In the instant case, the named defendants need not raise any defenses common to all members of the putative defendant class. Although defendants in their answering papers dispute the existence of the alleged conspiracy, there is nothing which prevents the named defendants from conceding that the unnamed defendants were involved in such a conspiracy. The named defendants arguably could then raise as their sole defense the contention that they did not participate in the admitted conspiracy. Such a

defense plainly would not be typical of those which might be asserted by unnamed defendants. *See Sommers v. Abraham Lincoln Federal Savings, supra,* 66 F.R.D. at 593. The section 1985(3) claim also presents the possibility that the named defendants could acknowledge the existence of the alleged conspiracy but deny their participation therein.

The court concludes that plaintiffs have failed to demonstrate that the named defendants will present defenses typical of those applicable to the unnamed defendants. The proposed defendant class, consequently, cannot be certified pursuant to Rule 23.

### Conclusion

For the foregoing reasons, plaintiffs' motion to certify a plaintiff class is granted and the following class is certified with respect to the actions against both the private defendants and the public defendants:

> All United States citizen migrant farmworkers who were employed in the New York apple harvest by New York apple defendants for the years 1977–1979 and who were subject to terms and conditions of employment, other than salary, inferior to those offered foreign laborers in those harvests and (2) all United States citizen migrant farmworkers who applied for work with the New York apple defendants in the New York apple harvest for the years 1977–1979, but did not accept such employment as a result of the above-described inferior working conditions. This class shall include a subclass of Puerto Rico-based citizen migrant farmworkers who fit the description set forth above in sections (1) or (2) and who applied for employment in the relevant apple harvests through the Puerto Rico Department of Labor.

Plaintiffs' motion for certification of a defendant class is denied. Within thirty days of the date of this decision, plaintiffs are to submit, on motion, a proposed order directing the provision of notice to the members of the plaintiff class.

So ordered.